# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD FURNACE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>B. COPE, et al.,<br><br>　　　　Defendants. | Case No.: 1:16-cv-00420-LJO-BAM (PC)<br><br>ORDER DENYING REQUESTS FOR JUDICIAL NOTICE<br>(ECF Nos. 13, 15)<br><br>ORDER DENYING REQUEST FOR STATUS OF SCREENING AS MOOT<br>(ECF No. 17)<br><br>SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND<br>(ECF No. 10)<br><br>THIRTY-DAY DEADLINE |

Plaintiff Edward Furnace ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on March 28, 2016. (ECF No. 1). Plaintiff's first amended complaint, filed on May 5, 2016, is currently before the Court for screening. (ECF No. 10).

**I.     Requests for Judicial Notice (ECF Nos. 13, 15)**

In support of his first amended complaint, Plaintiff requests that the Court take judicial notice of allegedly discarded inmate appeals, along with a summary of his inmate appeals. (ECF Nos. 13,

1

15). Although not entirely clear, it appears that Plaintiff's request for judicial notice is an attempt to demonstrate exhaustion of administrative remedies in compliance with the Prisoner Litigation Reform Act.

At this time, the Court declines to take judicial notice of Plaintiff's allegedly discarded inmate appeals or the summary of inmate appeals to assess whether or not Plaintiff has satisfied the exhaustion requirements of the Prisoner Litigation Reform Act. A prisoner's failure to exhaust administrative remedies is an affirmative defense that generally must be raised by defendants and proven on a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

As indicated above, Plaintiff's first amended complaint is currently before the Court for screening. At the screening stage, the Court's primary inquiry is whether Plaintiff's first amended complaint, or any portion thereof, is subject to dismissal because it is frivolous or malicious, it fails to state a claim upon which relief may be granted, or it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

For these reasons, Plaintiff's requests for judicial notice are HEREBY DENIED. Insofar as Plaintiff's first amended complaint also includes a request for judicial notice of certain exhibits attached to his complaint, such a request is unnecessary and is DENIED. The exhibits are incorporated by reference into the amended complaint and, for purposes of screening, the allegations in the complaint are taken as true. *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009).

**II.     Motion for Status of Screening**

On May 19, 2017, Plaintiff submitted a letter to Court inquiring as to why his complaint had not been screened. (ECF No. 17.) Given the instant screening order, Plaintiff's request for status is unnecessary and is HEREBY DENIED as moot.

**III.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I*, 572 F.3d at 681 (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### IV. Plaintiff's Allegations

Plaintiff is currently housed at Pelican Bay State Prison in Crescent City, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP"). Plaintiff names the following defendants: (1) B. Cope, Institutional Gang Investigator ("IGI"); (2) A. Alafa, IGI Sergeant; (3) J. Harden, IGI Lieutenant; (4) John Doe, Inmate Task Force Lieutenant; (5) S. Wilson, Lieutenant; (6) L. Sudgeun, Correctional Officer; (7) C. Pfeiffer, Chief Deputy Warden; (8) E. Perez, CCII; (9) R. Molina, Lieutenant; (10) J. Ostrander, Lieutenant; (11) Dr. C.K. Chen; (12) Dr. R. Lozovoy; (13) G. Arrezola, CMA; (14) L. Villa, Correctional Officer; and (15) A. Murphy, SSU Agent, Sacramento.

///
///
///

First Cause of Action

Plaintiff alleges that this action relates to a continuing campaign of retaliation against him because of his race and his civil actions: *Furnace v. Giurbino*, Case No. 13-17620; *Furnace v. Junious*, Case No. 1:14-cv-01671-LJO-MJS; and *Furnace v. Nuckles*, Case No. C-09-6075 MMC.

On September 25, 2014, Plaintiff was transferred to KVSP as an inactive monitored Black Guerrilla Family ("BGF") from CSP-SHU, and was subsequently placed in Ad/Seg on October 21, 2014, for non-gang related or BGF reasons. Plaintiff contends that Defendant Cope and others seized Plaintiff's property on October 21, 2014, initiated a conspiracy to return him to SHU, manufactured intelligence and pried into his confidential legal matters in retaliation for several lawsuits filed by Plaintiff against CDCR officials.

On November 20, 2014, Plaintiff's legal property was returned. Plaintiff alleges that it was mixed up in order to interfere with his preparation for an attorney visit scheduled that same day. Plaintiff also alleges that certain items were missing, including an obituary of his uncle, John A. Greer, four large pictures of President Obama and his administration that are evidence in *Furnace v. Giurbino*, one picture of a black panther cat, twenty Black Heritage Ray Charles U.S. Postage stamps, and twenty Black Heritage Rosa Parks U.S. Postage stamps. Plaintiff asserts that converting his property and prying into his confidential legal matters by Defendant Cope and others was not related to prison security, but showed their discriminatory animus and intent to retaliate against him for exercising his First Amendment rights.

On November 23, 2014, Plaintiff lodged a 602 appeal, KVSP-0-14-03927, against Defendant Cope for the converted property. Defendant Harden allegedly cancelled the appeal after Defendants Cope and Alafa reportedly lied in a report by stating that Plaintiff refused to be interviewed. Plaintiff asserts that Defendants Cope, Alafa and Harden conspired to violate his rights by cancelling and not returning the appeal to him. Plaintiff further asserts that the failure to return the appeal violated his rights and the ability to challenge its erroneous cancellation.

Second Cause of Action

Plaintiff alleges that CDCR adopted discriminatory regulations, which have the effect of encouraging its IGI staff "to engage in racial profiling, invidious discrimination and other illegal [ ]

4

hijinks against its Black American prisoners," such as Plaintiff. (ECF No. 10, p. 9). Plaintiff asserts that the IGI and the inmate task force unit have made a compact to perpetuate gang activity and culture in violation of regulations and federal law. Plaintiff also asserts that IGI and the task force unit have established a custom of coaching and fabricating intelligence with a gang nexus that allows them to use any photo or tattoo of a dragon possessed by an African American prisoner to be labelled as BGF and sent to the SHU. Plaintiff contends that this custom by IGI violates the Equal Protection Clause of the Fourteenth Amendment because it "does not apply to similarly situated non-black prisoners possessing the same or like items." (ECF No. 10, p. 9). Plaintiff alleges that there is no valid legislative purpose for CDCR to have a regulation that "encourages and promotes its employees for enforcing racism, by making the color of a mans' [sic] skin the test of whether or not he has engaged in prohibited 'Gang Activity.'" (ECF No. 10, pp. 9-10).

On November 20, 2014, Plaintiff's property was returned, accompanied by a RVR-115 (Log No. ASU 114-11-002) authored by Defendants Cope, John Doe and Alafa. Plaintiff asserts that this RVR established Defendant Cope's incompetence at identifying BGF gang symbols and his discriminatory animus. Plaintiff also asserts that the RVR establishes the joint action in violation of his civil rights by Defendants Cope, Alafa and John Doe in manufacturing reasons to return Plaintiff to the SHU.

Plaintiff further alleges that he is a practitioner of Shetaut Neter and his religious beliefs are sincerely held. Plaintiff asserts that there is no connection between any of the pictures in the RVR, the BGF, Black culture and Ancient Egypt. Plaintiff further asserts that Defendant Cope altered the RVR pictures containing the flying dragon, knowing it was a business logo of Barbara Jean Nagle, who owns the company, "A Book You Want." Plaintiff contends that the document in its original form contained a price list for six books he wanted to buy. Plaintiff alleges that Defendant Cope altered the document to racially profile and retaliate against Plaintiff for his ongoing First Amendment conduct.

Plaintiff also alleges that the second photo in the RVR is not a BGF symbol, but a postcard sent to Plaintiff at his CSP-SHU address from the "Abolitionist Newspaper" in Oakland, California. Plaintiff asserts that the postcard is a mural of Quetzalcoatl, the Mesoamerican Feathered Serpent god, worshipped for centuries in Mesoamerica. Plaintiff contends that a non-expert viewing these

5

documents in their original form would conclude they were not gang symbols. Plaintiff further contends that to make Quetzalcoatl a BGF symbol is dubious since it is not used against either Northern or Southern validated Hispanics. Plaintiff asserts that the RVR's syllabus was manufactured by Defendant Cope, John Doe and Alafa to advance their conspiracy, and that these defendants racially profiled and retaliated against Plaintiff because of his ongoing First Amendment conduct.

Plaintiff contends that Defendant Wilson knew of Defendant Cope's machinations and could have stopped their commission during the December 6, 2014 hearing, but Defendant Wilson failed to do so because he had predetermined Plaintiff's guilt. Plaintiff asserts that Defendant Wilson found Plaintiff guilty of the RVR in order to advance the conspiracy of Defendant Cope and others to return Plaintiff to the SHU for maintaining a lawsuit against prison officials. On January 25, 2015, Plaintiff lodged an appeal contesting Defendant Wilsons's guilty determination. The appeal was accepted and processed as a staff complaint.

On March 6, 2015, Defendant Harden denied the appeal, concluding that Defendants Cope, John Doe, Alafa and Wilson did not violate CDCR policy or Plaintiff's civil rights. Plaintiff alleges that Defendant Harden knew of Defendant Cope's conspiratorial machinations because of his own dubious cancellation of another appeal. Plaintiff pursued Defendant Harden's denial to the third level of review. It was returned to him for inclusion of a form. Plaintiff attached the form and mailed it back to the inmate appeals branch in June 2015. Plaintiff believes that Defendant Sudgeun rerouted the appeal to Defendant Cope, who destroyed it to obstruct correspondence, third level review and proper exhaustion for PLRA purposes so that Agent Murphy would have enough time to revalidate Plaintiff.

Third Cause of Action

On February 5, 2015, Plaintiff lodged a separate appeal contesting Defendant Wilson's guilty findings. On February 26, 2015, Defendant Pfeiffer denied the appeal at the second level of review. Plaintiff asserts that Defendant Pfeiffer knew about Defendant Cope's conspiracy against Plaintiff because two of Plaintiff's appeals were connected. Plaintiff further asserts that Defendant Pfeiffer had the power to prevent Defendant Cope's conspiracies, but chose not to do so in violation of Plaintiff's civil rights. Plaintiff contends that Defendant Pfeiffer's refusal to take corrective action caused him

6

injury and served to advance the conspiracy to return Plaintiff to the SHU because of his race and First Amendment conduct.

On March 18, 2015, Plaintiff's appeal was returned to him. The following day, Plaintiff placed his appeal in an envelope addressed to the Inmate Appeals Branch in Sacramento as confidential legal mail. Plaintiff asserts that the ASU floor staff took the envelope for mailing, but it was rerouted and unlawfully seized and destroyed by IGI to obstruct correspondence, third level adjudication and exhaustion so that Agent Murphy would have enough time to revalidate and send Plaintiff back to the SHU. Plaintiff contends that the inmate appeals branch never received the appeal and it was not returned to him. Plaintiff further contends that the owner of the company "A Book You Want" and the publishers of the "Abolitionist Newspaper" are not BGF confederates in any capacity. Plaintiff alleges that the conspiratorial conduct of Defendants Cope, John Doe, Alafa, Harden, Wilson and Pfeiffer violated both his rights and criminal law.

Fourth Cause of Action

On August 5, 2015, Agent Murphy revalidated Plaintiff as an active BGF based on incompetent analysis by Defendant Cope and Agent Murphy of the pictures identified in the RVR.

On September 29, 2015, Plaintiff lodged an appeal from the Pelican Bay SHU contesting Defendant Murphy's action. Plaintiff asserts that neither Agent Murphy nor Defendants Cope, Alafa, John Doe, Wilson or Harden's expertise in identifying BGF gang symbols was grounded upon any type of demonstrable methodology or valid reasoning and instead rested solely on the basis of Plaintiff's race.

Plaintiff alleges that Agent Murphy revalidated Plaintiff on known fabricated evidence, causing Plaintiff injury, and was done to retaliate against Plaintiff for his First Amendment conduct and race.

Fifth Cause of Action

On March 24, 2015, Plaintiff was ducated to KVSP ASU1 medical clinic after submitting a CDC-7632 from to see the institutional podiatrist to renew his shoe chrono and buy a new pair of orthopaedic boots. Instead of seeing the podiatrist, Plaintiff saw Defendant Chen, who is not a podiatrist. When Plaintiff tried to explain his medical concern, Defendant Chen yelled, "I don't care

7

what you have. This not Corcoran. This Kern Valley. We do things our way here. Get him out of here. He's done. Get him out of here." Defendant Chen never examined Plaintiff's feet.

Defendant Villa, under Defendant Chen's orders, yanked Plaintiff out of a chair and threw him to the floor, causing serious injury to Plaintiff's left shoulder acromioclavicular joint. Defendant Villa tried to "chicken wing" Plaintiff, tightening the handcuffs, getting on Plaintiff's back and using his knee to place his weight on Plaintiff's neck. Defendant Villa allegedly whispered, "Fuck all you BGF niggers, this is my House, inter alia."

Plaintiff alleges that Defendant Villa used excessive force to cause harm, and Plaintiff made no aggressive actions. Plaintiff further alleges that Defendant Chen's open disrespect incited Defendant Villa's actions. Plaintiff asserts that Defendants Arrezola and Chen fabricated reports to justify Defendant Villa's use of excessive force.

On March 30, 2015, Plaintiff lodged a 602 appeal reporting the incident. Plaintiff contends that the appeal was destroyed to prevent an administrative record for the Court's review.

Plaintiff also alleges that Defendant Villa fabricated a RVR-115 incident report on March 24, 2015. On April 5, 2015, Plaintiff was found guilty during a hearing, and a final copy of the RVR was issued to Plaintiff on May 27, 2015. Plaintiff lodged an appeal contesting the guilty findings. Plaintiff asserts that Defendant Perez obstructed timely adjudication of the appeal to create an affirmative defense for Defendants Villa and Chen in this suit.

On April 21, 2015, Plaintiff filed a writ of habeas corpus in Kern County Superior Court to order the processing of his 602 appeals. Plaintiff filed two additional writs in Kern County for the same reason.

Sixth Cause of Action

In June 2015, Plaintiff placed the following items in a manila envelope, along with a letter to his mother, Alene Furnace: (1) poster of Thomas Sankara of Chad, West Africa; (2) poster of Maya Angelou, Ruby Dee, Bobby Womack and Sam Greenlee; (3) 1996 Black Seeds Black Historical and Educational calendar; and (4) 2011 Black Seed Black Historical and Educational calendar. Plaintiff

asserts that Alene Furnace never received these items, and that Defendants Sudgeun and Cope stole them to harass, racially profile and retaliate against Plaintiff.

On July 19, 2015, Plaintiff lodged a 602 concerning the theft of his outgoing mail by Defendant Cope. Plaintiff contends that Defendant Perez screened it out to obstruct adjudication and review. Plaintiff made corrections and resubmitted the appeal for processing. Defendant Sudgeun rerouted it to Defendant Cope, who then destroyed it.

On July 2, 2015, Defendants Cope, Alafa and John Doe allegedly fabricated a RVR-115 against Plaintiff, claiming that the articles of mail addressed to Alene Furnace were BGF gang materials. During a hearing on July 29, 2015, Defendant found Plaintiff guilty of the RVR. Plaintiff alleges that Defendant Molina refused to review the documents in their entirety, refused to produce Plaintiff's witnesses and rejected all of Plaintiff's evidence. Plaintiff further alleges that Defendant Molina stated, "I'm finding you guilty as charged; and you can put me in your next law suit, inter alia."

On August 25, 2015, Plaintiff lodged a 602 appeal contesting Defendant Molina's guilty finding. Plaintiff asserts that Defendant Sudgeun rerouted the appeal to Defendant Cope, who destroyed it. Plaintiff filed a third writ in Kern County Superior Court because the appeal was never processed or returned to him. On July 23, 2015, the Kern County Superior Court issued an order for an informal response. Plaintiff alleges that Defendants Cope, Alafa, John Doe, Molina and Sudgeun retaliated against him for petitioning the Kern County Superior Court concerning their discarding of his 602 appeals.

Seventh Cause of Action

Plaintiff asserts that KVSP medical staff deprived him of a competent medical evaluation and care for his left shoulder acromioclavicular joint injury caused by Defendant Villa's alleged assault on March 24, 2015. Plaintiff alleges that Defendant Villa intimidated Plaintiff from receiving treatment because Plaintiff feared being further assaulted.

In May 2015, Plaintiff was moved from ASU1 to ASU2 and thereafter sought a medical evaluation and care for his left shoulder. Plaintiff asserts that he could barely use or lift his left arm, and any time he was cuffed behind the back it exacerbated the pain.

In June 2015, Plaintiff submitted a CDC-7362 medical form seeking competent evaluation and care for his left shoulder.

On June 2, 2015, Plaintiff was seen by Defendant Lozovoy, who reportedly failed to evaluate the injury, disrespected him and prescribed ineffective Ibuprofen 400 mg. On the same day, Plaintiff lodged a health care appeal regarding Defendant Lozovoy's alleged failure to provide competent care and evaluation. Plaintiff alleges that the appeal was discarded, and that Defendants Chen and Lozovoy have established a custom of violating CDCR regulations in order to intimidate and obstruct prisoners from receiving competent medical evaluations.

On July 29, 2015, Plaintiff lodged a second health care appeal concerning his left shoulder injury. KVSP reported refused to process or answer this appeal until Plaintiff was housed in the Pelican Bay SHU on September 25, 2015.

<u>Eighth Cause of Action</u>

On July 7, 2015, Plaintiff filed a second writ in Kern County Superior Court because his 602 appeals were being discarded. After several weeks passed without Plaintiff receiving a case number, Plaintiff submitted a CDC-110 request to the KVSP mail room for a copy of his outgoing legal mail record.

On August 3, 2015, Plaintiff received a copy of his legal mail record and noticed that his second writ to Kern County Superior Court had not been logged or mail and that Defendant Sudgeun allegedly had discarded a 584-page response to a court order in the matter of *Furnace v. Gipson* and *Furnace v. Star*. Plaintiff asserts that both pieces of legal mail were picked up by ASU2 floor staff for mailing and logged in the legal book on July 22, 2015. Plaintiff contends that his legal mail was destroyed immediately after the Kern County Superior Court issued an informal response to his writ on June 23, 2015.

Prior to Plaintiff's transfer from KVSP, Defendant Ostrander allegedly feigned a search for Plaintiff's discarded legal mail from July 22, 2015, in order to persuade Plaintiff to stop his hunger strike. Plaintiff asserts that Defendant Ostrander lied about searching for the legal mail, and he lodged an appeal on August 9, 2015. Defendant Ostrander answered the appeal, claiming that Defendant "Sudgeun and no others were responsible for discarding [Plaintiff's] legal mail." Plaintiff asserts that

10

this response is contrary to the declaration of KVSP's litigation coordinator, B. Hancock. Plaintiff therefore contends that Defendant Ostrander became a co-conspirator and obstructed justice in violation of Plaintiff's rights.

### V. Deficiencies of Complaint

Plaintiff's first amended complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20. As Plaintiff is proceeding pro se, he will be granted an opportunity to amend his complaint to cure the identified deficiencies. To assist Plaintiff, the Court provides the following pleading and legal standards that appear applicable to his claims.

### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's first amended complaint is neither short nor plain. Rather, Plaintiff's allegations concern multiple events, multiple defendants and multiple claims during his incarceration at Kern Valley State Prison. Additionally, many of Plaintiff's allegations are based on conjecture or are conclusory in nature. If Plaintiff chooses to amend his complaint, he must set forth sufficient factual allegations to state a claim for relief that is plausible on its face.

### B. Federal Rules of Civil Procedure 18 and 20

A party asserting a claim "may join, as independent or alternative claims, as many claims as it has against an opposing." Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607. However, multiple parties may be joined as defendants in

one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [ ] any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Therefore, claims against different parties may be joined together in one complaint only if the claims have similar factual backgrounds and have common issues of law or fact. *Coughlin v. Rogers*, 130 F.3d 1348, 1350–51 (9th Cir. 1997).

Plaintiff may not pursue allegations against multiple parties involving multiple claims in this action. For example, Plaintiff may not pursue claims of retaliation involving one set of defendants while simultaneously pursuing claims for deliberate indifference to serious medical needs against another set of defendants. These differing claims do not arise out of the same transaction or occurrence and do not share common questions of law or fact. Therefore, in any amended complaint, Plaintiff must choose which defendants and claims he wishes to pursue in this action. However, if Plaintiff's amended complaint continues to improperly join claims and defendants, the Court will choose which cognizable claims, if any, that Plaintiff may pursue.

### C. Gang Validation

The bulk of Plaintiff's complaint concerns the allegedly wrongful revalidation of him as a BGF gang member. Plaintiff appears to challenge both the process and the evidence supporting his revalidation.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)). To satisfy due process, the administrative segregation process must meet only minimal due process requirements: an informal non-adversary hearing within a reasonable time after being segregated, notice of the charges or the reasons segregation is being considered, and an opportunity for the inmate to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *overruled on other grounds by Sandin*, 515 U.S. at 481.

The administrative determination also must meet the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Bruce,* 351 F.3d at 1287. Because the standard for "some evidence" is not high, a court need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. *Id*. at 1287-88. A reviewing court does not "examine the entire record, independently assess witness credibility, or reweigh the evidence." *Id*. at 1287. However, the evidence supporting the administrative determination must bear "some indicia of reliability." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted). California regulations regarding the quantity or quality of evidence required to support gang validation do not dictate the outcome of the federal due process analysis. A single piece of evidence that has sufficient indicia of reliability can be sufficient to meet the "some evidence" standard. *Bruce*, 351 F.3d at 1288.

Plaintiff does not assert that he was given inadequate notice of the evidence supporting his gang validation or that he lacked an opportunity to be heard regarding the validation decision. Thus, the only question before the Court is whether there was "some evidence" bearing some indicia of reliability upon which to base the decision.

In this instance, it is evident from Plaintiff's allegations that there was some evidence, including dragon symbols, supporting the decision, and Plaintiff does not assert otherwise. Instead, Plaintiff attempts to offer alternative explanations for the evidence. However, the evidence supporting the administrative decision does not have to logically preclude any other conclusion. *See Hill*, 472 U.S. at 457.

### D. False Evidence

Plaintiff alleges that various defendants wrote false reports. The creation of false evidence, standing alone, is not actionable under § 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).

///

///

### E. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff appears to allege that defendants retaliated against him by having him revalidated as a BGF gang member and by confiscating certain of his items, including outgoing mail addressed to his mother. Plaintiff's allegations are insufficient to state a cognizable claim for retaliation because he has failed to assert that defendants' actions did not reasonably advance a legitimate correctional goal. Gang validation and confiscation of gang symbols and contraband are clearly related to institutional security concerns.

### F. Grievances

Plaintiff appears to bring suit against various defendants based on the handling and denial of his inmate appeals (grievances), including the interception and rerouting of his appeals. However, Plaintiff cannot pursue any claims against staff relating to their involvement in the administrative processing or review of his prisoner grievances. The existence of an inmate grievance or appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the process was deficient. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

To state a claim under section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, *Iqbal*, 556 U.S. at 677; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002), and liability may not be based merely on Plaintiff's dissatisfaction with the administrative process or a decision on a grievance or appeal, *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640.

### F. Equal Protection

Plaintiff alleges he was discriminated against and "racially profiled" for gang validation because he is African American in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that he was treated differently than other non-black prisoners related to the possession of certain materials, including items dragon symbols. However, Plaintiff cannot maintain a plausible Equal Protection claim because certain symbols are known BGF gang-related symbols.

### G. Conspiracy

Plaintiff claims that defendants conspired to re-validate him as a gang member. To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). A bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983. Moreover, Plaintiff's claims of conspiracy are speculative and he presents no facts to show a meeting of the minds to violate his constitutional rights. Plaintiff was revalidated based on some evidence in the record, and any claim of improper evidence could have been challenged in the disciplinary hearing.

///

///

**H. Eighth Amendment – Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1018 (9th Cir. 2010). Deliberate indifference is a high legal standard. *Simmons*, 609 F.3d at 1019; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Shoulder Injury

Plaintiff asserts that KVSP medical staff deprived him of a competent medical evaluation and care for his left shoulder acromioclavicular joint injury. Specifically, Plaintiff alleges that he was seen by Defendant Lozovoy, who reportedly failed to evaluate the injury, disrespected him and prescribed ineffective Ibuprofen 400 mg. These allegations are not sufficient to state a cognizable claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. First, Plaintiff fails to identify the KVSP medical staff, with the exception of Defendant Lozovoy, that allegedly deprived him of a competent medical evaluation. Fed. R. Civ. P. 8. Second, Plaintiff's allegations that he did not receive "competent" care from any defendant is, at best, an assertion of medical malpractice, which does not state a constitutional claim. A complaint of medical malpractice or that a physician has negligently diagnosed or treated a medical condition does not state a valid claim under the Eighth Amendment. *Wilhelm*, 680 F.3d at 1122. Third, and finally, Plaintiff's mere disagreement with the treatment that he received from Defendant Lozovoy is not sufficient to state a cognizable claim for deliberate indifference. A prisoner's disagreement with a physician's treatment or diagnosis

does not support a claim of deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Orthopedic Boots

Plaintiff alleges that Defendant Chen refused to examine him on March 24, 2015, for renewal of Plaintiff's chrono and the purchase of new orthopaedic boots. Plaintiff's bare allegation that Defendant Chen failed to examine his feet is not sufficient to state a cognizable constitutional claim. There is no indication that the failure to examine Plaintiff's feet on one occasion resulted in further significant injury or the unnecessary and wanton infliction of pain.

### I. Eighth Amendment – Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v.McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted); *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013).

At the pleading stage, Plaintiff has stated a cognizable excessive force claim against Defendant Villa. However, Plaintiff's complaint fails to comply with joinder requirements. Therefore, in any amended complaint, Plaintiff must choose which claims and defendants he would like to proceed against in this action.

### J. Outgoing Mail

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). To the extent that Plaintiff is alleging that his mail is opened, inspected and gang-related items confiscated, he is advised that prison regulations relating to the regulation of incoming and outgoing mail are analyzed under the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. In determining the reasonableness of the regulation, a court must consider the following factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate

17

governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." *Id.* at 89-90.

Further, generally isolated incidents of mail interference or tampering will not support a claim under section 1983 for a violation of Plaintiff's constitutional rights. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

### K. Access to Courts

Although inmates have a fundamental constitutional right of access to the courts, *Lewis v. Casey,* 518 U.S. 343, 346 (1996); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009), to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice with respect to contemplated or existing litigation," *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 348) (internal quotation marks omitted), cert. denied, 132 S.Ct. 1823 (2012); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Plaintiff has not alleged any actual injury related to contemplated or existing litigation. Plaintiff therefore cannot state a cognizable claim for denial of access to the courts in the absence of any actual injury.

### VI. Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20. The Court will grant Plaintiff a final opportunity to cure the identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's first amended complaint is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint; and
4. <u>If Plaintiff fails to file a second amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim</u>.

IT IS SO ORDERED.

Dated: **June 16, 2017**　　　　　/s/ *Barbara A. McAuliffe*
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE