UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD FURNACE,<br><br>        Plaintiff,<br><br>v.<br><br>B. COPE, et al.,<br><br>        Defendants. | Case No.: 1:16-cv-00420-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br>(ECF No. 24)<br><br>FOURTEEN-DAY DEADLINE |

Plaintiff Edward Furnace ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on March 28, 2016. (ECF No. 1). On June 19, 2017, the Court dismissed Plaintiff's first amended complaint with leave to amend. (ECF No. 18.) Plaintiff's second amended complaint, filed on August 14, 2017, is currently before the Court for screening. (ECF No. 24.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I*, 572 F.3d at 681 (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at Pelican Bay State Prison in Crescent City, California. The events in the amended complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP"). Plaintiff names the following defendants: (1) B. Cope, Institutional Gang Investigator ("IGI"); (2) A. Alafa, IGI Sergeant; (3) John Doe, Inmate Task Force Lieutenant; (4) S. Wilson, Lieutenant; (5) R. Molina, Lieutenant; (6) L. Villa, Correctional Officer; and (7) A. Murphy, SSU Agent, Sacramento.

Plaintiff alleges that this action relates to retaliation against him because of his race and his court actions: *People v. Furnace*, Case No. SS082222A; *Furnace v. Giurbino*, Case No. 13-17620; *Furnace v. Junious*, Case No. 1:14-cv-01671-LJO-MJS; and *Furnace v. Nuckles*, Case No. C-09-6075 MMC. Plaintiff further alleges that on September 25, 2014, Plaintiff was transferred to KVSP general population as an inactive monitored Black Guerrilla Family ("BGF") from CSP-SHU, and was subsequently placed in Ad/Seg on October 21, 2014, for non-gang related reasons. Plaintiff contends that Defendants Cope and Alafa seized Plaintiff's property on October 21, 2014, and held a meeting of

2

the minds to discriminate and retaliate against Plaintiff for his jailhouse lawyering activities on CDCR's green wall prison guard gang. Plaintiff asserts that his property contained no BGF material, but defendants chose to punish Plaintiff for maintaining a lawsuit and defeating a fabricated criminal charge.

On November 20, 2014, Defendants Cope and Alafa returned Plaintiff's legal property, but it was mixed up, which Plaintiff suspects was done in order to interfere with his preparation for an attorney visit scheduled that same day. Plaintiff also alleges that certain items were missing, including an obituary of his uncle, John A. Greer, four large pictures of President Obama and his administration being used as evidence in *Furnace v. Giurbino*, one picture of a black panther cat, twenty Black Heritage Ray Charles U.S. Postage stamps, and twenty Black Heritage Rosa Parks U.S. Postage stamps. Plaintiff asserts that converting his property and prying into his confidential legal matters by Defendants Cope and Alafa was not related to a legitimate penological purpose.

On November 23, 2014, Plaintiff lodged a 602 appeal, KVSP-0-14-03927, against Defendant Cope for the converted property. Defendant Cope's supervisor allegedly cancelled the appeal after Defendants Cope and Alafa reportedly lied in a report by stating that Plaintiff refused to be interviewed about the appeal. Plaintiff asserts that the supervisor cancelled the appeal because of the dishonest report and never returned the appeal. Plaintiff further asserts that the failure to return the appeal effectively chilled his right to challenge the erroneous cancellation. He also claims that the discarding of the appeal was an attempt to supress the conversion of Plaintiff's personal property by Defendants Cope and Alafa. Plaintiff filed a complaint with the Victim Compensation & Government Claims Board concerning the converted property.

Revalidation

Plaintiff asserts that Defendants Cope and Alafa, after searching his property, found no evidence with any indicia of reliability that they could use to revalidate him. Plaintiff contends that Defendants Cope and Alafa had a meeting of the minds to abuse the gang validation regulations and to punish Plaintiff for maintain lawsuits against CDCR. Plaintiff concedes that prisons have a bona fide interest in stopping gang activity, but they cannot perpetuate it.

Plaintiff alleges that CDCR adopted discriminatory regulations, which permits IGI staff to abuse the validation regulations with invidious racial discrimination and denial of equality under the law.

On November 20, 2014, Plaintiff's property was returned, accompanied by a RVR-115 (Log No. ASU 114-11-002) authored by Defendants Cope, John Doe and Alafa. Plaintiff asserts that the only bona bide BGF Dragon symbol representing the gang are those with the dragon wrapping its body around a prison gun tower or clutching a prison guard in its claws. Plaintiff contends that the RVR establishes Defendant Cope's incompetence at identifying BGF gang symbols and abuse of the regulations. Plaintiff believes that the photos in support of the RVR do not contain indicia of reliability or amount to some evidence. Plaintiff also asserts that the RVR establishes the joint action in violation of his civil rights by Defendants Cope, Alafa and John Doe.

Plaintiff asserts that the evidence supporting the RVR is false. Plaintiff further asserts that Defendant Cope altered the RVR pictures containing the flying dragon, knowing it was a business logo of Barbara Jean Nagle, who owns the company, "A Book You Want." Plaintiff contends that the document in its original form contained a price list for six books he wanted to buy.

Plaintiff also alleges that the second photo in the RVR is not a BGF symbol, but a postcard from the "Abolitionist Newspaper" depicting a mural of Quetzalcoatl, the Mesoamerican Feathered Serpent god. Plaintiff alleges that CDCR does not use the image of Quetzalcoatl to validate Northern or Southern Hispanic gang members, who are direct descendants of the Mesoamerican people.

Plaintiff contends that Defendants Cope, Alafa and Wilson had a meeting of the minds to find him guilty of the RVR-115 prior to the hearing. During the hearing on December 6, 2014, Defendant Wilson allegedly failed to exercise any independent judgment regarding the evidence, telling Plaintiff that he was no expert and was going off of what IGI told him.

On January 25, 2015, Plaintiff lodged an appeal contesting Defendant Wilson's guilty findings. The appeal was accepted and processed as a staff complaint.

On March 6, 2015, the appeal was denied and returned to him. Plaintiff sent it to the Inmate Appeals Branch. In June 2015, the appeal was returned to him with instructions to attach a CDC-1858 form. Plaintiff attached the form and returned the appeal. Plaintiff asserts that the appeal was

4

intercepted and discarded by Defendant Cope to obstruct the review and any investigation into his conduct with Defendant Alafa, John Doe and Wilson.

Plaintiff asserts that a second appeal was denied at the second level of review on February 26, 2015. Plaintiff mailed it to the Inmate Appeals Branch for a third level review. Plaintiff asserts that this appeal also was intercepted and discarded by Defendant Cope.

On August 5, 2015, Defendant Murphy revalidated Plaintiff as an active BGF based on the RVR-115 and arranged for him to be transferred to the Pelican Bay State Prison SHU.

On September 29, 2015, Plaintiff lodged an appeal challenging Defendant Murphy's revalidation. Plaintiff asserts that prior to August 5, 2015, Defendants Murphy, Cope and Alafa had a meeting of the minds to revalidate him with the evidence in the RVR. Plaintiff asserts that none of the defendants are bona fide experts at identifying BGF symbols. Plaintiff further asserts that defendants abused the validation regulations to retaliate against him for petitioning the government for redress of a grievance regarding green wall gang members.

<u>Excessive Force</u>

On March 24, 2015, Plaintiff was ducated to KVSP ASU1 medical clinic to see the podiatrist to renew his shoe chrono and buy a new pair of orthopaedic boots. While attempting to explain his medical concern, the doctor became belligerent, yelling "I don't care what you have. This not Corcoran. This Kern Valley. We do things our way here. Get him out of here. He's done. Get him out of here."

Plaintiff was handcuffed behind his back straddling a chair with his feet wrapped around its legs. When Plaintiff against tried to explain his medical concern, the doctor yelled, "No. Get him out of here."

Defendant Villa violently yanked Plaintiff out of the chair, throwing him hard to the floor and causing injury to Plaintiff's left shoulder acromioclavicular joint. Defendant Villa tried to "chicken wing" Plaintiff, tightening the handcuffs, getting on Plaintiff's back and using his knee to place his weight on Plaintiff's neck. Defendant Villa allegedly whispered, "Fuck all you BGF niggers, this is my House, inter alia." Plaintiff alleges that Defendant Villa used excessive force to cause harm.

On March 30, 2015, Plaintiff lodged a 602 appeal reporting the incident. Plaintiff contends that the appeal was discarded to chill his rights. Upon information and belief, Defendant Wilson told Defendant Villa about his BGF status and his ongoing court matters involving CDCR's green wall gang.

Plaintiff also alleges that Defendant Villa wrote a RVR-115 incident report to justify the assault. On April 5, 2015, Plaintiff was found guilty during a hearing, and a final copy of the RVR was issued to Plaintiff on May 27, 2015. Plaintiff lodged an appeal contesting the guilty findings. Plaintiff asserts that Defendants' colleagues working in the appeals office created unnecessary delays so that the third level review would reject his appeal as untimely.

Obstruction of Mail

In June 2015, Plaintiff placed the following items in a manila envelope, along with a letter to his mother, Alene Furnace: (1) poster of Thomas Sankara of Chad, West Africa; (2) poster of Maya Angelou, Ruby Dee, Bobby Womack and Sam Greenlee; (3) 1996 Black Seeds Black Historical and Educational calendar; (4) 2011 Black Seed Black Historical and Educational calendar; and (5) a letter to his mother. Plaintiff asserts that Alene Furnace never received these items, and that Defendant Cope and others stole them to retaliate against Plaintiff.

On July 19, 2015, Plaintiff lodged a 602 concerning the theft of his outgoing mail by Defendant Cope. Plaintiff contends that the appeal was screened out for frivolous reasons. Plaintiff made corrections and resubmitted the appeal for processing, but it was again discarded.

On July 2, 2015, Defendants Cope, Alafa and John Doe allegedly fabricated a RVR-115 against Plaintiff, claiming that the articles of mail addressed to Alene Furnace were BGF gang materials. During a hearing on July 29, 2015, Plaintiff was found guilty of the RVR. Plaintiff alleges that Defendant Molina, the hearing officer, failed to review the article of outgoing mail in their entirety, and would not allow Plaintiff to call or use his witnesses. Defendant Molina allegedly vocalized threats to Plaintiff concerning his active court cases. Plaintiff further alleges that Defendant Molina stated, "I'm finding you guilty as charged; and you can put me in your next lawsuit." Plaintiff alleges that Defendants Cope, Alafa and Molina had a meeting of the minds to find him guilty prior to July 29, 2015.

On August 5, 2015, Plaintiff lodged a 602 appeal contesting Defendant Molina's guilty finding. Plaintiff asserts that the appeal was discarded.

### III. Deficiencies of Complaint

#### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's second amended complaint is neither short nor plain. Rather, Plaintiff's allegations concern multiple events, multiple defendants and multiple claims during his incarceration at Kern Valley State Prison. Additionally, many of Plaintiff's allegations are based on conjecture or are conclusory in nature. Despite being provided with the relevant pleading standard, Plaintiff has been unable to cure this deficiency.

#### B. Federal Rules of Civil Procedure 18 and 20

A party asserting a claim "may join, as independent or alternative claims, as many claims as it has against an opposing." Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607. However, multiple parties may be joined as defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [ ] any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Therefore, claims against different parties may be joined together in one complaint only if

the claims have similar factual backgrounds and have common issues of law or fact. *Coughlin v. Rogers*, 130 F.3d 1348, 1350–51 (9th Cir. 1997).

Plaintiff may not pursue allegations against multiple parties involving multiple claims in this action. For example, Plaintiff may not pursue claims of retaliation involving one set of defendants while simultaneously pursuing claims for excessive force against a different defendant. These differing claims do not arise out of the same transaction or occurrence and do not share common questions of law or fact.

### C. Due Process

#### 1. Gang Validation

The bulk of Plaintiff's complaint concerns the allegedly wrongful revalidation of him as a BGF gang member. Plaintiff appears to challenge the evidence supporting his revalidation.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)). To satisfy due process, the administrative segregation process must meet only minimal due process requirements: an informal non-adversary hearing within a reasonable time after being segregated, notice of the charges or the reasons segregation is being considered, and an opportunity for the inmate to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *overruled on other grounds by Sandin*, 515 U.S. at 481.

The administrative determination also must meet the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Bruce,* 351 F.3d at 1287. Because the standard for "some evidence" is not high, a court need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. *Bruce*, 351 F.3d at 1287-88. A reviewing court does not "examine the entire record, independently assess witness credibility, or reweigh the evidence." *Id*. at 1287. However, the evidence supporting the administrative determination must bear "some indicia of reliability." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted).

California regulations regarding the quantity or quality of evidence required to support gang validation do not dictate the outcome of the federal due process analysis. A single piece of evidence that has sufficient indicia of reliability can be sufficient to meet the "some evidence" standard. *Bruce*, 351 F.3d at 1288.

Plaintiff does not assert that he was given inadequate notice of the evidence supporting his gang validation or that he lacked an opportunity to be heard regarding the validation decision. Thus, the only question before the Court is whether there was "some evidence" bearing some indicia of reliability upon which to base the decision.

In this instance, it is evident from Plaintiff's allegations that there was some evidence, including dragon symbols, supporting the decision, and Plaintiff does not assert otherwise. Instead, Plaintiff attempts to offer alternative explanations for the evidence. However, the evidence supporting the administrative decision does not have to logically preclude any other conclusion. *See Hill*, 472 U.S. at 457.

### 2. Contraband

Plaintiff also asserts a claim related to his RVR regarding the outgoing mail to his mother, and the guilty finding by Defendant Molina. However, Plaintiff fails to state a cognizable procedural or substantive due process claim based on the confiscation of his outgoing mail and the guilty finding by Defendant Molina. With respect to the procedural due process, Plaintiff has not alleged that he was denied a hearing, failed to receive notice of the charges or that he did not have an opportunity to present his views. *Toussaint*, 801 F.2d at 1100. With respect to substantive due process, Plaintiff has not demonstrated that there was no evidence to support Defendant Molina's guilty finding. *Bruce,* 351 F.3d at 1287-88.

### D. False Evidence

Plaintiff alleges that various defendants wrote false reports. The creation of false evidence, standing alone, is not actionable under § 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners

have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted).

### E. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff appears to allege that defendants retaliated against him by having him revalidated as a BGF gang member and by confiscating certain of his items, including outgoing mail addressed to his mother. Plaintiff's allegations are insufficient to state a cognizable claim for retaliation because he has failed to assert that defendants' actions did not reasonably advance a legitimate correctional goal. Gang validation and confiscation of gang symbols and contraband are clearly related to institutional security concerns. Plaintiff also does not adequately allege that any of the defendants knew of his previous or ongoing court cases or litigation against CDCR.

### F. Equal Protection

Plaintiff alleges he was discriminated against in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate

state purpose, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that he was treated differently than other non-black prisoners related to the possession of certain materials, including items dragon symbols. However, Plaintiff cannot maintain a plausible Equal Protection claim because certain symbols are known BGF gang-related symbols.

### G. Conspiracy

Plaintiff claims that defendants conspired to re-validate him as a gang member. To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). A bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983. Moreover, Plaintiff's claims of conspiracy are speculative and he presents no facts to show a meeting of the minds to violate his constitutional rights. Merely alleging that defendants had a meeting of minds is not sufficient to demonstrate an agreement to violate his constitutional rights.

### H. Eighth Amendment – Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v.McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted); *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013).

At the pleading stage, Plaintiff has stated a cognizable excessive force claim against Defendant Villa.

### I. Outgoing Mail

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). To the extent that Plaintiff is alleging that his mail is opened, inspected and

gang-related items confiscated, he is advised that prison regulations relating to the regulation of incoming and outgoing mail are analyzed under the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. In determining the reasonableness of the regulation, a court must consider the following factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." *Id.* at 89-90.

Here, Plaintiff's outgoing mail was intercepted as contraband and gang symbols. Plaintiff admits that prisons have a bona fide interest in stopping gang activity. Further, generally isolated incidents of mail interference or tampering will not support a claim under section 1983 for a violation of Plaintiff's constitutional rights. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

### J. Grievances

Plaintiff appears to bring suit against various defendants based on the handling and denial of his inmate appeals (grievances), including the interception and destruction of his appeals. However, Plaintiff cannot pursue any claims against staff relating to their involvement in the administrative processing or review of his prisoner grievances. The existence of an inmate grievance or appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the process was deficient. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

### K. Declaratory Relief

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. *Rhodes v. Robinson*, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

///

**IV. Conclusion and Recommendations**

The Court finds that Plaintiff has stated a cognizable claim against Defendant Villa for excessive force in violation of the Eighth Amendment, but has not stated any other cognizable claims. Despite being provided with the relevant legal and pleading standards, Plaintiff has been unable to cure the remaining deficiencies in his complaint, and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's second amended complaint, filed on August 14, 2017 (ECF No. 24), for excessive force in violation of the Eighth Amendment against Defendant Villa; and

2. All other claims, including Plaintiff's claim for declaratory relief, and all other defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 11, 2018**　　　　　　/s/ *Barbara A. McAuliffe*
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE